**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 5:02CR30020** |
| | : | |
| **KHARY JAMAL ANCRUM** | : | |

**United States' Motion to Dismiss in Response to Petitioner's Motion
for Relief Pursuant to Title 28, United States Code, Section 2255**

Khary Jamal Ancrum filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 on March 16, 2020.  ECF No. 1512. He asserts ineffective assistance of counsel in the course of litigation of a motion for reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(b) and Section 404 of The First Step Act of 2018, Pub.L.No. 115-391, 132 Stat. 5194, 5222.  Because 28 U.S.C. § 2255 is not a vehicle available to attack sentence reductions under 18 U.S.C. § 3582(c), and a § 2255 petition attacking Ancrum's sentence is untimely and an unauthorized successive petition, the Court lacks jurisdiction over his petition and must be dismissed. Even if the Court were to consider the petition on its merits, Ancrum cannot prevail, and his petition must be dismissed.

**FACTS AND PROCEDURAL HISTORY**

Khary Jamal Ancrum was indicted in a Second Superseding Indictment on July 10, 2002, and charged, *inter alia*, with conspiracy to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). ECF No. 17. At the time of his offense, a violation of § 841(b)(1)(A) carried a mandatory minimum sentence of 10 years and maximum sentence of

life imprisonment for offenses involving at least fifty grams of cocaine base.   21 U.S.C. § 841(b)(1)(A) (2002).

The arrest warrant issued for Ancrum was returned as executed on July 17, 2003. ECF No. 312. His initial appearance was not held until almost nine months later on April 4, 2004, which presumably[1] meant he was held on a detainer in another facility in the interim. *See* ECF No. 418.

On July 19, 2004, the United States filed an Information, pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851,  giving notice that Ancrum was subject to mandatory life imprisonment if convicted due to two prior felony drug convictions.  ECF No. 478.

Ancrum was convicted of Count One by a jury on July 22, 2004.  ECF No. 494.

A Presentence Report (PSR) was prepared. *See* ECF No. 1456. Ancrum was held accountable for approximately 1,160 grams of cocaine base, and his sentence was enhanced for possession of a dangerous weapon and for having an aggravated role in the offense. *Id.* at 10. That yielded a base offense of level 40.  PSR at 10. Ancrum was determined to be a career offender. *Id.* at 10. However, the calculations under U.S.S.G. § 4B1.1 yielded a lesser offense level (37), but were not used to determine his guideline range because the offense level for the offense was higher than the career offender leverl. *Id.* Ancrum had 13 criminal points, plus was a career offender, and thus had a criminal history category of VI. *Id.* at 15. His guideline range was 360-life. *Id.* at 19.

The Presentence Report listed the details of Ancrum's criminal history, including that on March 26, 2004, he was sentenced in the United States District Court for the Eastern District of Virginia ("EDVA") to 13 months imprisonment for possession of cocaine base and possession of

---

[1] The returned warrant is not available electronically, so the United States has no means at its disposal at this time to verify that it was filed at detainer. The United States presumes it is correct he was held in EDVA on a WDVA detainert given the length of time between his arrest and his initial appearance and the fact that he was convicted in EDVA in the interim.

marijuana. *Id.* at 14. The description of the offense established Ancrum had been the subject of a traffic stop by the U.S. Park Police. *Id.* at 15. There was an open bottle of beer in the car, which led to him being asked to step out of the vehicle and a pat-down search. *Id.* Officers ultimately recovered 3.9 grams of cocaine base and .52 grams of marijuana from his person and a total of $2592 in cash. *Id.*

Ancrum's sentence was driven by the mandatory minimum applicable to him, meaning the guideline calculation ultimately had no impact. He was sentenced on December 8, 2004, to mandatory life imprisonment. ECF No. 527.

Ancrum appealed his conviction, which was affirmed by the Court of Appeals on June 2, 2006. ECF No. 649; *United States v. Ancrum*, 183 Fed.Appx. 385 (4th Cir. 2006). He filed a petition for a writ of certiorari, which was denied on October 10, 2006. *Ancrum v. United States*, 549 U.S. 968 (U.S. Oct. 10, 2006).

On October 29, 2007, Ancrum filed a motion to vacate pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel. *Ancrum v. United States*, 7:07cv00523 (W.D.Va.). Because he filed his petition more than one year after his conviction was final, his petition was denied. Mem. Op., *Ancrum v. United States*, No. 7:07cv00523, at 1 (W.D.Va. Nov. 16, 2007). He appealed, but a certificate of appealability was denied and the appeal was dismissed. *United States v. Ancrum*, 274 Fed.Appx. 335 (4th Cir. Apr. 23, 2008).

Ancrum filed a second § 2255 petition on June 20, 2014, challenging his sentence in light of *Alleyne v. United States*, 133 S.Ct. 2151 (2013). ECF No. 1353. It was dismissed without prejudice as an unauthorized successive petition on October 7, 2014.  ECF No. 1355.

On December 21, 2018, Congress enacted The First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). Section 404 of The First Step Act allows a sentencing court to reduce sentences imposed for crack cocaine offenses whose penalties had been reduced by the Fair Sentencing Act of 2010, Pub. L. 111-220, §§ 2–3, 124 Stat. 2372 (Aug. 3, 2010). First Step Act, § 404(b); *see also United States v. Wirsing*, 943 F.3d 175, 176 (4th Cir. 2019), *as amended* (Nov. 21, 2019). Its intent was to provide further remedy for the "significant disparities in the treatment of cocaine base (also known as crack cocaine) as compared to powder cocaine," by allowing courts to modify defendants' sentences on covered crack cocaine offenses to allow them the benefit of the Fair Sentencing Act, which did not apply retroactively to defendants sentenced before it effective date. *See Wirsing*, 943 F.3d at 176-77; *Dorsey v. United States*, 567 U.S. 260, 264 (2012). The First Step Act permits modification of existing sentences under 18 U.S.C. § 3582(c)(1)(B). *Wirsing*, 943 F.3d at 183.

On January 9, 2019, Ancrum filed a *pro se* motion to appoint counsel and a *pro se* motion to reduce his sentence under the First Step Act. ECF No. 1443.

On January 14, 2019, the Court entered Standing Order 2019-1, which appointed the Federal Public Defender to represent any defendant who previously had court-appointed counsel or is currently indigent "to determine whether that defendant may qualify" for First Step Act consideration. Standing Or. 2019-1 (W.D.Va. Jan. 14, 2019), *available at* vawd.uscourts.gov/media/3096340/2019-1.pdf (*last visited* Aug. 14, 2020 at 2:23 p.m.).

Pursuant to the Standing Order, Ancrum's motion for counsel was granted on January 22, 2019. *See* ECF No. 1445. Assistant Federal Public Defender ("AFPD") Lisa M. Lorish entered an appearance on Ancrum's behalf on March 5, 2019. ECF No. 1465.

4

On March 15, 2019, counsel filed a Motion to Reduce Sentence under the First Step requesting a reduction from life imprisonment to time served, which at that time was approximately 187 months. FSA Motion, at 1-2; ECF No. 1472. Counsel argued if the Fair Sentencing Act had applied, Ancrum's statutory custody range would have been 10 years to life. *Id.* at 2. Because he remained a career offender, his guideline range would be 360-life. *Id.* at 3. With good time credit, she argued he had served the equivalent of 220 months as of the date of filing. She argued that sentence satisfied the sentencing factors of 18 U.S.C. § 3553(a), pointing to his troubled youth and history of non-violent drug charges, his efforts at rehabilitation including a large number of vocational classes while incarcerated, and his family support as grounds to reduce his sentence. *Id.* at 3-4. Counsel also noted that, due to the mandatory life sentence, the Court had not resolved a number of guideline objections at sentencing and argued that if her objections had been adopted, Ancrum's guideline range would have been reduced to a level 32, V with a range of 188-235 months which she stated would be even lower now in light of intervening Guideline reductions. *Id.* at 4. She also presented data that only a fraction of career offenders are currently sentenced within the career offender guideline range. *Id.*

Accompanying the motion were three exhibits: Bureau of Prison (BOP) records setting forth Ancrum's history of educational programming at the Bureau of Prisons, his lack of disciplinary record for the previous six months, and his drug education; the sentencing transcript; and, a letter of support from Ancrum's wife. ECF Nos. 1472-1, 1472-2, 1473-3.

The United States responded that Ancrum was ineligible for relief because his violation involved over 1.1 kilograms of crack cocaine, which is well over the threshold for a conviction under 21 U.S.C. § 841(b)(1)(A) after the Fair Sentencing Act. ECF No. 1482 at 6 (setting forth an

argument that has since been rejected by *Wirsing*, 943 F.3d at 186). The United States also argued if the Court were to consider granting Ancrum a reduction, his guideline range would be determined by the career offender guidelines and would be 360 to life, based upon an offense level of 37 and criminal history category VI. *Id.* at 10.

On May 14, 2019, the Court granted Ancrum's motion and reduced his sentence to 240 months and 8 years supervised release. ECF No. 1489. The Court ruled Ancrum was eligible for consideration, rejecting the United States' argument that it should consider the drug weight involved in the offense to determine eligibility. Mem.Op, May 14, 2019, at 7-8; ECF No. 1488. It found his based offense level would be 36 (a base offense level of 32 increased by 4 levels for use of a firearm and role in the offense), which would be increased to 37 because of his career offender status. *Id.* at 9 n.2. His guideline range would be 360 to life. The court then considered the § 3553(a) factors, referenced the favorable evidence put forward by Ancrum's counsel, and reduced his sentence to 240 months—a 12-year or 33% variance below the bottom of the guideline range. *Id.* at 11.

Ancrum did not appeal the court's ruling on his FSA motion.

Approximately six months later, on November 8, 2019, Ancrum sent a letter to the Court asking for his sentence to be run concurrently with the 13-month sentence imposed in the EDVA on March 26, 2004. ECF No. 1495 (docketed November 14, 2019).

On November 15, 2019, this Court entered an order construing Ancrum's letter as a motion to correct an error in the imposition of sentence under Federal Rule of Criminal Procedure 35(a). ECF No. 1496 at 1. It directed the United States and the Federal Public Defender to respond to the Court addressing the procedural and substantive aspects of Ancrum's request. *Id.* at 4. It made

6

several comments and factual findings it wished the parties to address. The Court noted that neither the original judgment nor Ancrum's First Step Act pleadings had mentioned the prior sentence, and Ancrum had never before asked that his sentence in this Court be run concurrently with the EDVA sentence. *Id.* at 1. It confirmed the offense was not assigned criminal history points in his PSR because it was deemed to be related conduct to the drug conspiracy of which he was convicted in this Court. *Id.* at 3. And, it noted three procedural hurdles faced by Ancrum that the parties were to address: (1) he did not ask in 2004 for his WDVA sentence to be run concurrent to his EDVA sentence; (2) he did not ask in his First Step Act motion for his sentence to be run concurrently to his EDVA motion; and (3) his Rule 35(a) request appears untimely. *Id.*

The United States responded that under the terms of 18 U.S.C. § 3582 and of the First Step Act, the Court did not have the authority to further amend Ancrum's sentence. Rule 35(a), which together with § 3582(c)(1)(B) allows for modification in certain circumstances, did not apply because any correction must be made within 14 days and Ancrum's motion was untimely. ECF No. 1498 at 2. The First Step Act explicitly prohibits courts from granting a reduction under its terms if a previous reduction had been granted or a previous motion denied after a "complete review of the motion on its merits," which Ancrum had already had. *Id.* at 4 (quoting First Step Act, § 404(c)).

AFPD Lisa Lorish responded that the Court should amend the judgment to allow for concurrent sentences, noting that there had been no reason in 2004 to ask for a concurrent sentence given that Ancrum was sentenced to life imprisonment. ECF No. 1499 at 1-2. She argued the Court should employ Federal Rule of Criminal Procedure 36, which allows for correction of a clerical error that causes a sentence to be longer than it would have been absent the error. *Id.* at 2 (citing

*United States v. Vanderhorst*, 927 F.3d 824, 827 (4th Cir. 2019). She proffered that she "was unaware of the EDVA sentence and did not mention it in the First Step Act motion" she filed on his behalf, noting it was not mentioned in the sentencing transcript from his original sentence or in the PSR Addendum prepared by the Probation Office prior to his First Step Act motion. *Id.*

On January 22, 2020, this Court denied Ancrum's motion, finding that Rule 36 is inapplicable. ECF No. 1500 at 4. It explained the *Vanderhorst* case inapplicable as it involved an indisputable clerical error in a state court database that led to an erroneous career offender determination. *Id.* at 3. And, other cases correcting sentences under Rule 36 were limited to similar clear and indisputable clerical errors. *Id.* Here, the Court found, there was no clerical error that resulted in a higher sentence. *Id.* at 4. Rather, Ancrum's motion raised a substantive issue—whether his sentence should be run concurrently to the EDVA sentence. *Id.* The court also ruled that the motion was untimely under Rule 35 and must be denied. *Id.*

Ancrum did not appeal the denial of his motion.

On March 16, 2020, Ancrum filed the instant motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence. ECF No. 1512. He asserts ineffective assistance of counsel during and after the First Step Act proceedings resulting in prejudce to him. ECF No. 1512 at 4. He argues his counsel's performance was deficient because she had access to the information in his PSR that the EDVA sentence existed and it was a related case, yet failed to argue that his sentence be run concurrently to it. *Id.* at 5. He further asserts her performance was deficient in arguing that Rule 36 should be utilized to amend his judgment without arguing part of the clerical error was the fault of the U.S. Probation Office for omitting the EDVA sentence from the PSR Addendum. *Id.* at 7.

He further argues his counsel was ineffective for failing to appeal the Court's denial of his motion to amend his judgment. *Id.* at 8. He requests an evidentiary hearing. *Id.* at 7.

Ancrum submitted an affidavit from AFPD Lorish in which she affirms she did not notify the Court of the 13-month EDVA sentence nor argue that the offense was relevant conduct and should be imposed concurrently under U.S.S.G. § 5G1.3(b). ECF No. 1512-2 at 2. She asserts she was ineffective in failing to provide that information, that her performance fell below an objective standard of reasonableness, and that as a result of her alleged failures, she claims "Ancrum is currently serving 240 months plus 13 months for the same offense conduct." *Id.*

## ANALYSIS

### I.   Reductions under 18 U.S.C. § 3582(c) are not subject to attack by a § 2255 motion.

This Court does not have jurisdiction to entertain Ancrum's motion as sentence reductions under 18 U.S.C. § 3582(c) are not subject to attack by a § 2255 motion.

28 U.S.C. § 2255 allows a prisoner to move to vacate, set aside, or correct a sentence "upon the ground that the sentence *was imposed* in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a) (emphasis added). Initial motions to vacate must be filed within one year from the date on which a petitioner's judgment becomes final. 28 U.S.C. § 2255(f)(1). Where a petitioner has appealed to the Supreme Court, his judgment becomes final on the date the petition for writ of certiorari is denied. *Clay v. United States*, 437 U.S. 522, 527 (2003). Second or successive petitions must be authorized by the Court of Appeals. 28 U.S.C. § 2255(h).

Ancrum's conviction was final on the date the Supreme Court denied his petition for writ of certiorari on October 6, 2006. To be timely, a § 2255 petition had to have been filed by October 6, 2007. The instant petition was filed in March 13, 2020. Moreover, Ancrum has already had a § 2255 petition, and, as been previously ruled in his case, any further petition challenging the judgment in his case is successive and requires authorization to proceed.

Ancrum is seeking to avoid these limitations by seeking to attack the amended sentence imposed by this Court on his First Step Act § 404 motion. If the reduced sentence were to constitute a new judgment in his case, then the time limitation would be restarted and Ancrum would not need authorization for a successive petition. *See Magwood v. Patterson*, 561 U.S. 320, 342 (2010) (a new judgment issued after successful habeas petition allows for new habeas challenge as to that judgment). But, as explained below, a sentence reduction under the First Step Act is a sentencing modification within the meaning of 18 U.S.C. § 3582(c). And, § 2255 is not a vehicle available for attacking a sentence modification under § 3582(c). Because Ancrum's First Step Act motion is a sentence reduction proceeding under § 3582(c), it is not subject to attack via § 2255 and must be dismissed as an unauthorized successive and untimely petition.

To understand why, it is necessary to start with the background on the First Step Act and on 18 U.S.C. § 3582(c).

### A.    Legal Background on the First Step Act.

In 2010, Congress enacted the Fair Sentencing Act, which, among other things, aimed to reduce the sentencing disparity between offenses involving powder cocaine and those involving cocaine base ("crack"). *See* Fair Sentencing Act of 2010, Pub. L. 111-220, §§ 2–3, 124 Stat. 2372 (Aug. 3, 2010); *see also*, *e.g.*, *Dorsey v. United States*, 567 U.S. 260, 269 (2012); *United States v.*

*Johnson*, 732 F.3d 109, 112 (2d Cir. 2013). Among other things, Section 2(a) of the Fair Sentencing Act increased the threshold quantities of crack necessary to trigger the 10-year mandatory minimum set forth in 21 U.S.C. § 841(b)(1)(A) from 50 grams to 280 grams, and increased the threshold quantity for a 5-year mandatory minimum in § 841(b)(1)(B) from 5 grams to 28 grams. Originally, these amendments did not apply retroactively to defendants sentenced before the Fair Sentencing Act's effective date, August 3, 2010. *See Dorsey*, 567 U.S. at 264.

In order to provide further remedy for the "significant disparities in the treatment of cocaine base (also known as crack cocaine) as compared to powder cocaine," on December 21, 2018, Congress enacted The First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).[2] *United States v. Wirsing*, 943 F.3d 175, 176-77 (4th Cir. 2019), *as amended* (Nov. 21, 2019). Section 404 of the Act permits this Court, upon motion of the defendant or the government, or upon its own motion, to treat the Fair Sentencing of 2010 as if it were retroactive and impose a reduced sentence

---

[2] Section 404 of the First Step Act reads:

**SEC. 404. Application of Fair Sentencing Act.**

(a) Definition of covered offense.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) Defendants previously sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) Limitations.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act of 2018, Pub. L. No. 115-015, § 404, 132 Stat. 015, 015 (2018).

on defendants whose statutory would have been different under Sections 2 and 3 of the Fair Sentencing Act, if no such reduction was previously granted. First Step Act, § 404. To be eligible for a reduction under the First Step Act, a defendant must have been convicted of a "covered offense," and must have been sentenced under the terms of the Fair Sentencing Act or have previously received a reduction. *Id.*; *Wirsing*, 943 F.3d at 185.

### B. First Step Act proceedings are § 3582(c) sentencing modifications that do not give rise to a newly-imposed sentence.

Sentences in criminal cases are imposed under the terms of 18 U.S.C. § 3582, which directs that a court consider the sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(a). Once imposed, a term of imprisonment is final and generally cannot be changed absent a specific statutory exception. *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010 ("The law closely guards the finality of criminal sentences against judicial 'change of heart.'"). "A judgment of conviction that includes . . . a sentence ['to imprisonment'] *constitutes a final judgment for all other purposes*," other than modifications pursuant to 18 U.S.C. § 3582(c), corrections pursuant to Federal Rule of Criminal Procedure 35 and 18 U.S.C. § 3742, and changes after a successful appeal. 18 U.S.C. § 3582(b) (emphasis added). 18 U.S.C. § 3582(c) explicitly prohibits modifications to a term of imprisonment, unless one of four enumerated exception exists:

(1) compassionate release or release for "extraordinary and compelling reasons," 18 U.S.C. § 3582(c)(1)(A);

(2) a modification "expressly permitted by statute," 18 U.S.C. § 3582(c)(1)(B);

(3) a modification under Rule 35, 18 U.S.C. § 3582(c)(1)(B);

(4) a retroactive guideline reduction, 18 U.S.C. § 3582(c)(2)

18 U.S.C. § 3582(c)(1)-(2). The Fourth Circuit has held that First Step Act reductions are modifications "expressly permitted by statute." *Wirsing*, 943 F.3d at 183. Accordingly, they fall under one of the limited exceptions that allow for modifications of a final sentence. *Id.* ("§ 3582(c)(1)(B) is the appropriate vehicle for a First Step Act motion"). Section 3582(b) makes it clear that convictions are final "for all other purposes," other than § 3582(c) modifications. Thus, modifications do not create a newly-imposed sentence within the meaning of § 3582(a).

In addition to the Fourth Circuit affirming that First Step Act motions are sentencing modifications under § 3582(c)(1)(B), at least five Courts of Appeals to date have affirmed that plenary resentencings are not called for by the First Step Act (and plenary resentencings would give rise to a newly-imposed sentence and new judgment). It follows that if First Step Act modifications do not allow for plenary resentencings, they also do not give rise to a newly-imposed sentence or new judgment.

The Sixth Circuit has explicitly rejected the argument that a de novo resentencing hearing is required, holding as *Wirsing* did, that § 3582(c)(1)(B) applies to First Step Act motions and that "[t]he First Step Act's limited, discretionary authorization to impose a reduced sentence is *inconsistent with* a plenary resentencing." *United States v. Alexander*, 951 F.3d 706, 707-08 (6th Cir. 2019) (emphasis added); *see also United States v. Foreman*, 958 F.3d 506 (6th Cir. 2020). Although it has also held the Court should conduct a careful review of all the issues, consider "guidelines and policy changes, along with the other § 3553(a) factors," and afford an opportunity to present objections, this is not at the same as plenary resentencing—in which all legal changes since the time of sentencing are incorporated. *United States v. Boulding*, 960 F.3d 774, 784-85 (6th Cir. 2020).

The Ninth Circuit has rejected plenary resentencings, holding "the First Step Act permits the court to sentence 'as if' parts of the Fair Sentencing Act had been in place at the time the offense occurred, not 'as if' every subsequent judicial opinion had been rendered or every subsequent state had been enacted." *United States v. Kelley*, 962 F.3d 470, 475 (9th Cir. 2020). The Ninth Circuit concluded that the lack of authority in the First Step Act for a court to resentence as if all subsequent legal changes had been in effect means "a court has no authority to do so."[3] *Id.* at 476.

The Fifth Circuit similarly rejected the defendant's argument the district court abused its discretion by failing to conduct a "complete review" of the motion, including failing to hold a hearing and order a new PSR. *United States v. Jackson*, 945 F.3d 315, 321 (5th Cir. 2019). It held the defendant "misreads the FSA in contending the phrase 'complete review of the motion on the merits' imposes a kitchen sink of procedural requirements.'" *Id.* Relying upon the Eighth Circuit's *Williams* case, it noted "nothing in the FSA requires" the Court to hold a hearing because "the FSA doesn't contemplate a plenary resentencing." *Id.* (citing *United States v. Williams*, 943 F.3d 841, 843 (8th Cir. 2019), and *United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir. 2019), *cert. denied* No. 19-5743 (Oct. 7, 2019)).

---

[3] The Ninth Circuit recognized its opinion is in tension with the Fourth Circuit opinion in *United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020), which requires the district court to correct *retroactive* errors in sentencing on a First Step Act motion. This tension does not render the Ninth Circuit's opinion inapplicable, however, to the issue of whether a plenary resentencing is called for by the First Step Act. It is possible for this Court to correct any retroactive errors that may exist, such as *Simmons* errors, without going so far as to order a plenary resentencing in which new guideline calculations are computed and *all* subsequent legal changes are incorporated. The Sixth Circuit in *Boulding* adopted exactly that approach—the Court should consider how the guidelines would look today, but such differences inform  the district court's "renewed consideration of the § 3553(a) factors," through "written presentation or an oral argument . . . within the scope of the district court's discretion." 960 F.3d at 784-85.  They do not give rise to a right to a plenary resentencing. *Id.*at 784.

14

The Eleventh Circuit, following the Fifth and Sixth Circuits, using the same basic analysis as is set forth above, rejected the argument the defendant had a right be present at a hearing on his First Step Act motion. *United States v. Denson*, 963 F.3d 1080, 1086 (11th Cir. 2020). The Court reasoned "Congress has provided 'a narrow exception to the rule of finality," and "authorized a district court to modify a prison term only under the three circumstances set forth in 18 U.S.C. § 3582(c)." *Id.* The First Step Act is a modification "otherwise expressly permitted by statute" and is thus allowed under 18 U.S.C. § 3582(c)(1)(B). *Id.* Because the Act is discretionary and "'does not mention, let alone mandate, a hearing'" and "'imposes no further procedural hoops,'" the Court held "the First Step Act itself does not grant . . . a legal right to a hearing." *Id.* (quoting *Williams*, 943 F.3d at 843, and *Jackson*, 945 F.3d at 321). The Court went on to note that Federal Rule of Criminal Procedure 43 governs when a defendant must be present. *Id.* While his presence is required at a sentencing, it is *not* required at a § 3582 proceeding: "All sentencing reduction proceedings under § 3582(c) are listed in Rule 43(b) as proceedings for which the defendant's presence is not required." *Id.*; *see also* Fed. R. Crim. P. 43(a)(3), (b)(4).

Finally, the Eighth Circuit has affirmed no hearing is required because "the Act does not mention, let alone mandate a hearing." *Williams*, 943 F.3d at 843. Rather, "[a] district court can conduct a complete review without a hearing." *Id.* at 844.

These holdings are consistent with how motions under the other provisions of § 3582(c) are handled. Case law addressing both Rule 35 and retroactive guideline amendment motions establish a full resentencing is not authorized under § 3582(c) generally. *See, e.g., Dillon v. United States*, 560 U.S. 817, 824-26 (2010) (full resentencing hearings are not authorized by retroactive guideline amendments); *United States v. Phillips*, 194 Fed. Appx. 154, 155 (4th Cir. 2006)

15

(quoting *United States v. Abreu-Cabrera*, 64 F.3d 67, 71 (2d Cir. 1995) and Fed. R. Crim. P. 35 advisory committee's note) ("The authority of the district court to modify a sentence pursuant to Rule 35(c) is severely limited . . . . The rule 'is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence.'"). The rationale in those cases is equally applicable to the First Step Act.

Although the First Step Act does not provide specific guidance as to how reductions should be implemented, courts have utilized the same basic procedures as has been employed when implementing other reductions authorized by 18 U.S.C. § 3582(c), with slight modifications found to have been authorized by the First Step Act itself. Courts determine, first, if the defendant's offense of conviction is a "covered offense," i.e., he is eligible for a reduction, and second, whether and to what extent to grant a reduction, including consideration of the § 3553(a) factors, the currently-applicable guideline range, and any retroactive intervening case law that would affect the defendant's sentence. *United States v. Chambers*, 956 F.3d 667, 671-72 (4th Cir. 2020); *see also United States v. Gordon*, 811 Fed.Appx. 82 (4th Cir. 2020) (affirming case where district court took this approach); *Hegwood*, 34 F.3d at 414  (treating FSA reductions similarly to retroactive guideline reductions under 18 U.S.C. § 3582(c)(2)); *United States v. Stanback*, 377 F.Supp.3d 618, 615-26 (W.D.Va. 2019) (finding it had the authority to modify defendant's sentence, then considering a range of information to determine extent of appropriate reduction).

What courts do not do is hold full plenary resentencings with the of rights attendant to such a hearing. When a defendant is sentenced, or resentenced, he is entitled to a hearing before the court at which he is present. Fed. R. Crim. P. 43(a)(3). But the United States is not aware of any

court that has held that hearings are required for a First Step Act reduction, much less a hearing where the defendant is present. And two Courts of Appeals and Rule 43 itself establish a hearing with a defendant present is not required. *Denson*, 963 F.3d at 1086; *Williams*, 943 F.3d at 843; Fed. R. Crim. P. 43(b)(4). Counsel has been appointed in this, and other districts, for defendants seeking relief, but the United States knows of no court that has held there is a Sixth Amendment right to counsel during First Step Act litigation. However, at least one Court of Appeals has held, *albeit* in an unpublished case, there is *no* right to counsel for First Step Act filings.[4] *United States v. Gibbs*, 787 Fed.Appx. 71 (3d Cir. 2019) (unpublished). And, other than applying intervening changes in law and updating the guideline range, the First Step Act has not reopened settled issues at sentencing for relitigation.

For all of these reasons, it is clear that the First Step Act allows for a modification of the originally-imposed term of imprisonment within the meaning of 18 U.S.C. § 3582(c). Reductions granted under the First Step Act do not result in a newly-imposed sentence within the meaning of 18 U.S.C. § 3582(a).

### C.  Because First Step Act modifications are not newly-imposed sentences within the meaning of 18 U.S.C. § 3582(a), they do not "reset the clock or count" for § 2255 petitions.

Although the United States has not found any cases in which a court has addressed whether § 2255 is available to challenge First Step Act/§ 3582(c)(1)(B) proceedings, the Fourth Circuit and

---

[4] There is another instance in which a Court has ruled that the Sixth Amendment is not implicated in a § 3582(c) proceeding. In *Dillon*, the Supreme Court considered whether the Sixth Amendment rights violated by the mandatory guideline scheme were implicated by the § 3582(c)(2) reduction rules that prohibited reductions below the guideline range. 560 U.S. at 528-29. They ruled they were not. "Taking the original sentence as given," the Supreme Court explained what the court did in determining the reduction is merely an exercise of the court's discretion, and thus does *not* implicate the Sixth Amendment. *Id.* It is important analogy to keep in mind. If Sixth Amendment rights do not attach to sentencing reduction proceedings, then it also follows that any errors may not be of a constitutional magnitude and cannot give rise to a § 2255 relief.

numerous courts, including another judge from this Court, have held § 2255 is not available to challenge other types of sentencing modifications authorized by § 3582(c).

In 2001, the Fourth Circuit considered whether a sentencing reduction granted under Rule 35 and § 3582(c)(1)(B) effected the date upon which the judgment became final for the purposes of § 2255. *United States v. Sanders*, 247 F.3d 139, 142 (4th Cir. 2001). It ruled it did not: "The plain language of 18 U.S.C. § 3582(b) establishes that a modification of a sentence does not affect the finality of a criminal judgment." *Id.* at 143. It explained that the sentence "was modified pursuant to § 3582(c)(1)(B)"—just like First Act reductions—and "[a]s § 3582(b)(1) contemplates." *Id.* And, "[t]he plain text of § 3582(b) clearly states that this later modification does not affect the date on which [the] judgment of conviction became final 'for all other purposes.'" *Id.* Accordingly, the defendant's petition, which was filed within a year of the modification, but not within a year of the judgment becoming final, was time-barred. *Id.* at 144.

Other courts have reached the same conclusion regarding reductions under § 3582(c)(2). The Fifth Circuit in 2015 considered whether an amended judgment from a § 3582(c)(2) proceeding resulted in a new judgment that would render a § 2255 petition not successive. *United States v. Jones*, 796 F.3d 483, 484 (5th Cir. 2015). The petitioner argued that *Magwood v. Patterson*, 561 U.S. 320 (2010) applied, which "held that when a habeas application 'challenges a new judgment for the first time, it is not 'second or succesive' under § 2244(b).'" *Jones*, 796 F.3d at 585 (quoting *Magwood*, 561 U.S. at 324). In *Magwood*, the defendant had his sentence vacated on federal habeas review, been resentenced, and filed a new habeas petition. *Id.* The Fifth Circuit pointed out that *Magwood* had not defined "new judgment" and considered whether a sentence reduced under § 3582(c)(2) qualifies as a "new judgment." *Id.* It held it does not: "A review of

the text of § 3582(c)(2), and of the Supreme Court's and our court's decisions interpreting it, makes clear that Jones *has received a reduced sentence, not a new one . . . .*" *Id.* (emphasis added). The Court explained that the Supreme Court had already held § 3582(c)(2) "does not authorize a sentencing or resentencing proceeding," but rather allows only for a modification—"only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Id.* (citing *Dillon*, 560 U.S. 817 at 825).[5]

The Seventh Circuit has reached the same conclusion, including an observation that is particularly critical to the distinction between a new judgment after a successful appeal or habeas petition and a reduced sentence under § 3582(c). In *White v. United States*, 745 F.3d 834 (7th Cir. 2014), the Seventh Circuit rejected the argument that a § 3582(c) reduction results in a new judgment for habeas purposes, holding "*Magwood* does not reset the clock or the count, for purposes of § 2244 and § 2255, when a prisoner's sentence is reduced." 745 F.3d at 837. The critical differences are (1) the sentence reduction "did not rest on a contention that [the original] sentence was unlawful (constitutionally or in any other way), and the district judge did not so find," and (2) the defendant "was not sentenced anew" because "§ 3582(c) is not 'resentencing' . . . [i]t is a sentence-reduction proceeding." *Id.* at 836.

Several district courts have reached the same conclusion as the Fifth and Seventh Circuits regarding § 2255 in the wake of § 3582(c)(2) reductions. *Perkins v. United States,* Nos. 3:14–CV–2183–K, 3:97–CR–0055–K–21, 2014 WL 2781845, *2 (N.D.Tex. June 19, 2014), *appeal pending* No. 14-10801 (5th Cir.); *Jackson v. United States,* Nos. 3:12–cv–3287, 3:12–cv–3350, 2014 WL

---

[5] The *Jones* Court also pointed out that the claims Jones sought to raise could have been raised in an earlier petition, but that does not affect the applicability of *Jones* to this situation. The fact remains that sentencing modifications do not give rise to new judgments that reset the clock for filing § 2255 petitions.

1351105, *3 (S.D.W.Va. Apr. 4, 2014); *Woods v. United States,* Nos. 13–CV–385–JPS, 95–CR–187–JPS, 2013 WL 1648299, *1 (E.D.Wis. Apr. 16, 2013). In addition, The Honorable Judge Michael Wilson of this Court in 2012 also rejected the argument that § 2255 could be used to challenge a § 3582(c)(2) reduction stating that "Section 2255 is not, however, a vehicle for attacking a sentence reduction under § 3582(c)(2)." *United States v. Casey*, No. 7:07cr00014, 2012 WL 4513811. *1 (W.D.Va. Oct. 1, 2012) (Wilson, J.).

It is true that there are some differences between how the First Step Act is implemented and how retroactive guideline changes are implemented. Whereas U.S.S.G. § 1B1.10 sets strict limits on the extent of a reduction that can be granted, what a court can consider in granting a First Step Act reduction is much broader more open-ended. The Fourth Circuit has held that retroactive intervening case law and current guideline ranges should be considered when granting a First Step Act reduction because the First Step Act uses the term "impose" rather than merely modify. *Chambers*, 956 F.3d at 672. The use of "impose" for implementing the First Step Act does not, however, go so far as amend the rule of the finality of judgment as it applies to 28 U.S.C. § 2255, because it still does not convert the First Step Act sentence reduction proceeding into a resentencing, for all the reasons previously argued. *See Foreman*, 958 F.3d at 511-12 (holding the use of the word "impose" in the First Step Act does not mean Congress created "an exception to the rule of finality"). The original judgment remains lawful—so much so that the court has the discretion to *decline* to grant a reduction under the First Step Act even where one is authorized by law. Even when a reduction is granted, the judgment is in no way vacated or overturned—it is merely modified or reduced. And it is reduced in a proceeding that can be conducted entirely via pleadings, without a right to counsel, without the physical presence of the defendant, without

20

witnesses, and without any of the requirements of sentencing hearing being fulfilled. Nothing about the proceeding indicates an exception to the § 3582(b) rule of finality or, in any way other, creates a new judgment that resets the clock or counter on § 2255 filings.

Because the First Step Act reduction did not reset the clock or counter for Ancrum's § 2255, his current petition is both untimely and barred as an unauthorized successive petition and must be dismissed.

II.     **Even if Ancrum's § 2255 Petition is considered on its merits, Ancrum cannot establish ineffective assistance of counsel as his counsel's performance was not deficient and he cannot establish prejudice.**

Even if Ancrum's petition were somehow timely, not successive, and heard on its merits, Ancrum not prevail.

A.     **Ancrum cannot succeed on an ineffective assistance of counsel claim when he has no constitutional right to counsel.**

After conviction and exhaustion of appeals, the Court is "entitled to presume that [a defendant] stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). In order to overcome this presumption and obtain relief on a motion under 28 U.S.C. § 2255, a defendant must establish an error of "constitutional or jurisdictional magnitude" or an error which "could not have been raised on direct appeal, and if condoned, would result in a complete miscarriage of justice." *United States v. Shaid*, 937 F.2d 228, 233 & n.7 (5th Cir. 1991) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)). Errors of law and errors of fact do not provide a basis for collateral attack unless an error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979).

Ancrum asserts that he is entitled to § 2255 relief because his counsel failed to advise the Court that he had a 13-month consecutive sentence from another district, resulting in this Court

granting a reduction that did not take into consideration that lawfully-imposed sentence. There is no dispute as to that fact. He further argues under the advisory guidelines that his sentences should be concurrent, but points to no law that *requires* they be concurrent. These are not claims upon which relief can be granted, as they are not errors of a constitutional magnitude.

The information regarding the sentence and when it was imposed was in the Presentence Report and thus was before the Court. So counsel's failure to specifically raise it in her pleadings was not a glaring error. It was an omission which may, at best, be construed as an error of fact that might, but might not, have had any effect on the ultimate account. The Supreme Court has held a defendant is not entitled to § 2255 relief when, as here, "[a]ccording to all the objective criteria—federal jurisdiction, the Constitution, and federal law—the sentence was and is a lawful one . . . [a]nd in our judgment, there is no basis for enlarging the grounds for collateral attack to include claims based not an any objectively ascertainable error . . . ." *Addonizio*, 442 U.S. at 187. Counsel's omission was far from "a fundamental defect" and has not resulted "in a complete miscarriage of justice," as required by *Addonizio*. It is simply not an error "of constitutional or jurisdictional magnitude," and it must be dismissed.

### B. Even if Ancrum's ineffective assistance of counsel were considered, he cannot show his counsel was constitutionally ineffective.

In addition to not being an error of constitutional magnitude that can be corrected on a § 2255 petition, Ancrum cannot establish ineffective assistance of counsel. As an initial matter, he has no right to counsel on a sentencing reduction proceeding, and the United States is unaware of any support in the law for finding § 2255 remedies available for constitutionally ineffective assistance of counsel when there is no right to counsel in the first place. And his petition should be dismissed on those alternate grounds.

22

However, assuming *arguendo*, that the Court's order appointing counsel for the defendant somehow allows for an ineffective assistance of counsel claim to proceed, Ancrum could not prevail under existing habeas law.

A defendant in a criminal case may show constitutional error by establishing ineffective assistance of counsel. To establish constitutionally ineffective assistance, a defendant must satisfy both prongs of a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, he must show, considering all the circumstances, that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-91. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. In making this determination, there is a strong presumption that counsel's performance fell within the wide range of reasonableness. *Id.* at 689.

Second, he must affirmatively prove prejudice, in that there is a reasonable probability that the outcome would have been different if not for the deficiency. *Id.* at 694. If a defendant fails to meet the burden of proving prejudice, the reviewing court need not even consider the performance prong. *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Id.*

1.   <u>Failure to alert the Court to the consecutive 13-month sentence was not ineffective assistance of counsel.</u>

Ancrum claims his counsel was constitutionally ineffective because she failed to draw the Court's attention to the fact, contained in the Presentence Report, that he also a consecutive 13-

month sentence from another district to serve and failed to ask that the sentences be imposed concurrently. Even assuming Ancrum can raise this claim as to a sentence reduction proceeding in which he has no constitutional right to counsel, he cannot prevail, as he cannot establish deficient performance or prejudice.

Ancrum cannot establish prejudice, meaning the Court need not even consider whether counsel's oversight was constitutional deficient. The First Step Act grants the Court the authority to reduce sentences on covered offenses, it does not explicitly grant courts the authority to amend judgments to run sentences concurrently that were not previously imposed that way. And, for the reasons previously argued, the First Step Act does not authorize plenary resentencings. Given it is unclear if the Court even had the authority to grant the relief Ancrum requests, Ancrum cannot establish prejudice. Assuming, however, the Court did have such authority, reductions are entirely discretionary, and the guideline section upon which Ancrum relies is advisory. Ancrum cannot establish the Court would have given him any additional relief.

Even if Ancrum could establish prejudice, he cannot establish his counsel's performance was constitutionally deficient. The information about the sentence was before the Court in the Presentence Report. There is nothing in existing case law or standards of representation that would establish counsel was expected to argue that other sentence from other courts should also be taken into consideration when considering a First Step Act reduction. Here, as it turns out, the sentences were related for the purposes of relevant conduct under the Guideline. But, as previously stated, that type of omission or mistake is not one of constitutional magnitude or otherwise sufficiently severe to establish a constitutionally deficient performance of counsel.

2.     Ancrum cannot establish ineffective assistance of counsel over failure to appeal

Failure to consult a defendant about an appeal "when there is reason to think either (1) that a rational defendant would want an appeal . . ., or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing" is a violation of a "constitutionally imposed duty." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). Failure to file a notice of appeal when one is unequivocally requested is *per se* ineffective and necessitates reentry of the judgment so that an appeal may be noted. *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993).

Here, Ancrum does not claim that he ever requested an appeal be filed, so even if this claim were cognizable, the failure to file an appeal would not constitute ineffective assistance of counsel. Ancrum does not claim his counsel failed to consult him on an appeal. But, even construing his petition very liberally to include such a claim, he could still not prevail because he cannot establish there is any reason to think a rational defendant would have wanted an appeal in this situation, even after the denial of the Rule 36 motion. Ancrum's counsel succeeded in eliminating the *life sentence* Ancrum was serving and having it reduced to *20 years*—78% of which he had already served. She successfully had his sentence reduced from the rest of his remaining life, without the possibility of parole, to about five more years to serve. Given the success of the outcome, there was no reason to think that any rational defendant would be unsatisfied and wish to seek an appeal.

Ancrum argues she should have known he would want to appeal because she had sought time served. But, Ancrum overlooks the fact that his life sentence remains lawful. It not only remains lawful under as pre-Fair Sentencing Act sentence. But, if Ancrum were convicted today of the same offense, under a post-Fair Sentencing Act indictment, he would *still* face mandatory life imprisonment, as his offense involved over 1 kilogram of crack cocaine—substantially more

25

than the 280 grams required under 21 U.S.C. § 841(b)(1)(A). The district court did not have to reduce Ancrum's sentence at all, and when it did, it did not have to grant him the substantial reduction from the guideline range that it granted. In light of the extraordinarily successful outcome obtained by Ancrum's counsel, there is no reason to believe any rational defendant would have wished to appeal.

Ancrum also cannot establish prejudice from the failure to appeal. For the reasons set out by the district court, neither Rule 35 nor Rule 36 allowed reconsideration of the Court's First Step Act reduction. An appeal would have been futile.

For these reasons, Ancrum cannot meet the test for constitutionally ineffective assistance of counsel on a claim of failing to appeal.

## III.    Ancrum is not entitled to release during the pendency of his § 2255 petition.

Finally, Ancrum seeks release during the pendency of his petition. ECF No. 1513. He argues in light of COVID-19, he should be released to location monitoring. There is authority to court to grant a bond to a defendant if there is a likelihood of success on a § 2255 petition. Because Ancrum is not entitled to a § 2255 petition, he is not eligible for bond while it is under consideration. His motion should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Ancrum's petition should be dismissed as untimely and as an unauthorized successive petition. Even if Ancrum's petition were considered on its merits, it still must be dismissed for failing to state a claim upon which relief can be granted.

Respectfully submitted,


THOMAS T. CULLEN
United States Attorney


/s/ Jennifer R. Bockhorst
Tennessee Bar No. 021395
Attorney for United States of America
U.S. Attorney's Office
180 West Main Street
Abingdon, Virginia 24210
276-628-4161
276-628-7399 (fax)


### CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August, 2020, I electronically filed the foregoing

Motion with the Clerk of the Court using the CM/ECF system, and caused a copy to be by first-

class mail to:

Khary Ancrum
41746-083
FCI Florence
P.O. Box 6000
Florence, CO  81226


/s/ Jennifer R. Bockhorst

27